1

2

3

4                    UNITED STATES DISTRICT COURT

5                          DISTRICT OF NEVADA

6                                  * * *

7    CATHERINE A. ORCUTT,                     Case No. 2: 15-02474-JCM-PAL

8                               Plaintiff,
                                             **REPORT OF FINDINGS AND**
9         v.                                 **RECOMMENDATION**

10   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,        (Mot. to Remand – ECF No. 19)
                                             (Cross-Mot. to Affirm – ECF No. 24)
11
                               Defendant.
12

13        This matter involves Plaintiff Catherine A. Orcutt's appeal and request for judicial review

14   of the Acting Commissioner of Social Security, Defendant Nancy A. Berryhill's final decision

15   denying her claim for disability insurance benefits under Title II of the Social Security Act (the

16   "Act"), 42 U.S.C. §§ 401–33.[1]    This appeal is referred for a report of findings and

17   recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of

18   Practice.

19                              **BACKGROUND**

20        Ms. Orcutt protectively filed an application for Title II disability benefits on November 7,

21   2007, at the age of 48.  AR 88–97.[2]  Orcutt claimed she was unable to work because of herniated

22   and bulging discs in her back.  AR 126.  She injured her back in April 2007 while working as an

23   accounts payable clerk in New York.  AR 381.  The Social Security Administration denied her

24
     _____
25   [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to the Federal Rules of
     Civil Procedure and the Social Security Act, the court therefore substitutes Berryhill for Carolyn W. Colvin
26   as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d) (allowing automatic substitution of a public officer's
     successor while an action is pending); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this
27   subsection shall survive notwithstanding any change in the person occupying the office of Commissioner
     of Social Security or any vacancy in such office.").

28   [2] "AR" refers to the Administrative Record (ECF No. 16-1), a certified copy of which was filed under seal
     on the court's docket and delivered to the undersigned upon the Commissioner's filing of her Answer.

                                       1

application initially and on reconsideration.  AR 47–52.

An administrative law judge ("ALJ") held a hearing in October 2009 where Ms. Orcutt appeared with counsel.  AR 24–46.  In a November 2009 decision ("2009 decision"), the ALJ found that Orcutt was disabled as of June 19, 2009, the date Orcutt turned 50 and her age category changed to an individual closely approaching advanced age.  AR 16–23.  Ms. Orcutt asked the Appeals Council to review the 2009 decision as it related to the period between the date of her injury and the date her age category changed—April 5, 2007, through June 18, 2009.  AR 166–78. The Appeals Council denied review, and the 2009 decision became final.  AR 1–3.  Orcutt filed suit in the United States District Court for the District of Northern New York, but the parties stipulated to remand the case "pursuant to sentence 4 of 42 U.S.C. § 405(g) so that further administrative action may be taken, including a *de novo* hearing."  AR 539.  Thus, the 2009 decision was reversed and remanded to the Commissioner.  *Id.*

On remand, the Appeals Council issued a comprehensive order returning the case to an ALJ for further evaluation.  AR 543–46.  The order expressly identified multiple issues with the 2009 decision:

> • The hearing decision indicates that "some weight" was assigned to the objective medical evidence diagnosing the claimant's thoracic spinal condition (AR[3] 20). The hearing decision suggests that "some weight" was also assigned to the evidence from the Syracuse Orthopedic Surgeons (AR 20). "[L]ittle weight" was assigned to the treatment notes of the claimant's chiropractor (AR 20).  Finally, "some weight" was assigned to the notes and records from St. Joseph's Hospital, and the evidence from the New York Spine and Wellness Center, and New York Pain Center (AR 21). The Appeals Council notes, however, that this objective medical evidence was not subject to the weighing procedures outlined in 20 C.F.R. 404.1527. Further evaluation of the medical evidence of record is warranted.

> • The record contains a medical source statement completed by Stephen C. Robinson, M.D., on November 10, 2009 (AR 439-442). Documentation submitted by the claimant's representative indicates that this evidence was entered via the Electronic Records Express (ERE) application on November 13, 2009 (AR 437). There is no indication in the hearing decision, however, that Dr. Robinson's medical opinion was considered, or even received. Further evaluation of this medical opinion is required.

> • The hearing decision indicates that all of the claimant's examining physicians "stated that while there was varied levels of disability all were temporary," and that the claimant's orthopedic surgeons" do not place the claimant on total disability but

---

[3]  The remand order refers to the Administrative Record as "Tr."  AR 543–46.  For consistency and ease of reference, the court substitutes "AR" through out the quotation of the remand order.

emphatically state she is temporarily and partially disabled" (AR 20). The evidence of record suggests, however, that Dr. Robinson consistently opined that the claimant was under a "temporary" "total disability" (AR 208, 211, 215, 218, 221, 227, 344, 349, 353, 357, 361, 364). On August 1, 2008, Dr. Robinson concluded that the claimant was under a "partial disability" that was "permanent, moderate to marked" (AR 338, 340, 389, 418, 422, 429). Accordingly, further evaluation of the medical opinions that appear in the record is warranted.

• The hearing decision does not contain an evaluation of the other medical source opinions of H. Jean Landcastle, MS, ANP, and Ralph Krutulis, D.C. On October 13, 2009, Ms. Landcastle filled out a "Residual Functional Capacity Questionnaire" on the claimant's behalf (AR 406-409). This other medical source opinion contains limitations that were not adopted in the residual functional capacity used in the hearing decision. The hearing decision does not otherwise address Ms. Landcastle's opinion. Further evaluation of this other medical source opinion is warranted.

The hearing decision correctly identifies that chiropractors are not acceptable medical sources (AR 20). The hearing decision continues on, however, to indicate that the opinion of the claimant's chiropractor was given "little weight" as the determination that the claimant was totally disabled was "unsupported by any of the objective medical evidence of record and is not consistent with any other opinion in the record" (AR 20). The Appeals Council notes, however, that Dr. Robinson consistently opined that the claimant was under a "total disability" (AR 211, 215, 218, 221, 227, 344, 349, 353, 357, 361, 364). Accordingly, further evaluation of this other medical source opinion is warranted.

• The hearing decision indicates that the claimant has the residual functional capacity for work-related functions that equate to a maximum sustained capability for a reduced range of sedentary work (AR 19). The Appeals Council notes, however, that the decision does not contain a function-by-function assessment of the claimant's ability to do work-related physical and mental activities and sufficient rationale with specific references to evidence of record in support of the assessed limitations. Further evaluation of the claimant's residual functional capacity is warranted.

• The hearing decision indicates that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment (AR 19). The hearing decision goes on to state that the claimant "has not taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain" (AR 20). The Appeals Council notes, however, that the claimant was prescribed narcotic based pain relieving medications during times relevant to the hearing decision (AR 38, 429). The hearing decision does not sufficiently consider the following factors in evaluating the intensity, persistence and limiting effects of the alleged symptoms: objective medical evidence; medical opinions; prior work record; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication and other measures used to relieve symptoms. Accordingly, further evaluation of the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms is required.

AR 543–45. To resolve these issues, the Appeals Council ordered the ALJ to:

• Give further consideration to the medical evidence of record, in accordance with 20 CFR 404.1529.

• Give further consideration to the November 10, 2009, treating source opinion of Dr. Robinson pursuant to the provisions of 20 CFR 404.1527 and Social Security

Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1512). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

• Give further consideration to the other treating source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the respective treating sources to provide additional evidence and/or further clarification of the opinions (20 CFR 404.1512). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's respective treating sources.

• Give further consideration to the other medical source opinions that appear in the record pursuant to the provisions of Social Security Ruling 06-3p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the respective other medical source to provide additional evidence and/or further clarification of the opinions (20 CFR 404.1512). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's other medical sources.

• Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

• Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529) and Social Security Ruling 96-7p.

AR 545. The Appeals Council also instructed the ALJ to offer Ms. Orcutt the opportunity for another hearing, address evidence submitted to the Appeals Council, and "take any further action needed to complete the administrative record and issue a new decision." *Id*.[4]

In October 2013, a different ALJ held a second hearing where Ms. Orcutt appeared with counsel. AR 517–37. Orcutt's counsel asserted that she was disabled due to significant spine issues and her disability began in April 2007, not June 2009. AR 520. Counsel further contended that the favorable portion of the 2009 decision should remain in effect and only the disputed time period should be considered; however, the ALJ indicated that "when they vacate the whole thing, then the whole thing is on the table." AR 521. The ALJ issued an unfavorable decision on April 22, 2014, finding that Orcutt was not disabled through December 31, 2012, her date last insured. AR 480–96. Orcutt requested review of the ALJ's decision by the Appeals Council, but the

---

[4] After the remand order was issued, counsel informed the Commissioner that Ms. Orcutt recently moved to Las Vegas and requested that her filed be transferred to Nevada. AR 615.

decision became final when the Appeals Council denied review in October 2015.  AR 443–46.  Orcutt timely filed a Complaint (ECF No. 4) seeking judicial review of the adverse decision.

Ms. Orcutt filed a Motion for Reversal and Remand (ECF No. 19), and the Commissioner filed a Cross-Motion to Affirm and Response (ECF Nos. 22, 24).  The court has reviewed the record and considered Orcutt's Motion, the Commissioner's Cross-Motion and Response, and Orcutt's Reply (ECF No. 23).  For the reasons explained, the court recommends that Ms. Orcutt's Motion be granted and the Commissioner's Cross-Motion be denied.

## DISCUSSION

### I.    APPLICABLE LAW

#### A.  Judicial Review of Disability Determinations

Federal district courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g).  However, judicial "review of social security determinations is limited."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  After an ALJ has held a hearing and the decision is final, § 405(g) allows a disability claimant to seek judicial review of an adverse decision by filing a lawsuit in a federal district court within the district where the claimant lives.  The statute authorizes the court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

The ALJ's findings of fact are conclusive if they are supported by "substantial evidence."  42 U.S.C. § 405(g).  The court may reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  To determine whether the ALJ's findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

"For highly fact-intensive individualized determinations like a claimant's entitlement to

disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency'." *Treichler*, 775 F.3d at 1098 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Thus, courts must "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (citing 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The ALJ's findings must be upheld if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674–75 (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

## B. Disability Evaluation Process

A five-step sequential evaluation process is used to determine whether a claimant is disabled and eligible for benefits:

> First, the agency must consider the claimant's current work activity. Second, the agency must consider the medical severity of the claimant's impairments. Third, the agency must determine whether the severity of those impairments is sufficient to meet, or medically equal, the criteria of an impairment listed in three of the Social Security Act's implementing regulations, published at 20 C.F.R. §§ 404.1520(d), 404.1525–26. Fourth, the agency determines whether the claimant can perform past relevant work in light of the claimant's residual functional capacity. Fifth, the agency assesses whether the claimant can make an adjustment to other work that exists in significant numbers in the national economy, based on the claimant's residual functional capacity.

*Shaibi*, 883 F.3d at 1106 (citing 20 C.F.R. § 404.1520(a)). " 'The claimant carries the initial burden of proving a disability in steps one through four'." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to continue his or her past work with specific medical evidence, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *Shaibi*, 883 F.3d at 1106.

/ / /

6

## II.    THE ALJ'S DECISION

An ALJ is required to follow the five-step process to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an ALJ makes a finding of disability or non-disability at any step, no further evaluation is required.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Here, the ALJ followed the five-step process and issued an unfavorable decision (the "Decision") on April 22, 2014, finding that Orcutt was not disabled through December 31, 2012, the date last insured.  AR 477–96.  Ms. Orcutt does not challenge the ALJ's findings at steps one through three, but asserts legal error at step four.  At step one, the ALJ found that Orcutt had not engaged in SGA since April 5, 2007, the alleged onset date.  AR 483.  At step two, the ALJ determined Orcutt had the following severe impairments: (i) degenerative disc disease of the thoracic spine and (ii) moderate degenerative changes of the cervical spine.  AR 483.  At step three, the ALJ found that Orcutt did not have an impairment or combination of impairments that meet or medically equal one of the impairments described in the Listings.  *Id*.

### A.    Step Four – RFC Determination

The fourth step requires an ALJ to determine whether a claimant has the residual functional capacity ("RFC") to perform his or her past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f).  To answer this question, an ALJ must first determine a claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996).  In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996); SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record.  An ALJ must also consider opinion evidence in accordance with 20 C.F.R.

1  §§ 404.1527 and 416.927 as well as SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996); SSR 96-5p,

2  61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 71 Fed. Reg. 45593 (Aug. 9, 2006).

3        Although the ALJ found that Ms. Orcutt's medically determinable impairments could

4  reasonably be expected to cause some of her alleged symptoms, the ALJ determined that her

5  statements concerning the intensity, persistence and limiting effects of those symptoms were not

6  entirely credible.  AR 485.  After considering the entire record, the ALJ concluded that Orcutt had

7  the RFC, through December 31, 2012, the date last insured, "to perform sedentary work as defined

8  in 20 CFR 404.1567(a) with unlimited sitting, and standing and/or walking up to 2 hours in an 8-

9  hour workday with: frequent balancing, occasional stooping, frequent overhead reaching

10  bilaterally, and, frequent operation of foot controls bilaterally."  AR 484.  In making this finding,

11  the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be

12  accepted as consistent with the objective medical evidence and the other evidence."  *Id*.  He also

13  considered opinion evidence.  *Id*.  The Decision states that Orcutt's RFC assessment was supported

14  by and consistent with "the objective medical evidence, as well as the record as a whole, and the

15  opinion of Dr. Cestkowski."  AR 489.  In addition, the physical RFC assessment by the state

16  agency medical consultant, AR 329–34, and Ms. Orcutt's testimony regarding her "activities of

17  daily living, as opposed to her alleged limitations," were consistent with and supported by the

18  record in its entirety and, therefore, supported the RFC assessment found.  AR 489.

19                    1.  The ALJ's Findings Concerning the Medical Evidence

20        Ms. Orcutt alleges she sustained a disabling neck and back injury on April 5, 2007, while

21  she pulled a box out from under her desk at work.  AR 484 (citing AR 126).  An MRI completed

22  in April 2007 revealed degenerative spondylosis and annular bulges T6-7 and T8-9.  AR 483

23  (citing AR 234, 238).  An annular bulge was present at T7-8 with possibly a small left paramedian

24  disc herniation associated with osteophyte, but no spinal cord compression was suspected.  *Id*.[5]

25  An x-ray showed dextroscoliosis in Orcutt's thoracic area and mild changes of spondylosis.

---

26  [5]  *See also* AR 227 (noting a herniated disc at T7-8 and bulging at T6-7 and 8-9); AR 776–777 (reporting

27  that a January 2013 MRI revealed annular tears with left dorsolateral disc protrusions at multiple levels,
   most prominent at T6-7, T7-8, T8-9, and T10-11, mild degeneration of multiple levels, and multiple

28  vertebral body hemangioma within T6).

8

AR 483 (citing AR 786).  Orcutt alleged symptoms from her spinal conditions including pain, muscle spasms, and an inability to sit, walk, bend, reach, twist, lift, or turn.  AR 484–85 (citing AR 126, 156).  Insofar as Orcutt alleged symptoms and functional limitations that would preclude her from performing the activities described in her RFC, the ALJ found that Orcutt's allegations were disproportionate to the objective medical findings, inconsistent with the medical opinion evidence, exaggerated, and not fully credible.  AR 489.

The ALJ afforded very little weight overall to the opinion of Ms. Orcutt's treating orthopedic surgeon, Stephen Robinson, M.D.  AR 485–87.  The ALJ determined that Dr. Robinson's opinions were "not supported by his own objective findings."  AR 486.  Robinson's physical examinations revealed normal motor strength and sensory response.  AR 486.  Although the doctor found some tenderness at T7, the ALJ stated that her spine was otherwise normal. AR 486 (citing AR 207–08 (Sept. 2007 treatment note)).  Orcutt's "general appearance and examination findings were all completely unremarkable."  AR 486 (citing AR 413 (Oct. 2008 treatment note)).  The ALJ noted that Dr. Robinson repeatedly stated in progress notes that Orcutt was disabled (*e.g.*, she was "temporarily and partially disabled" and she was under a "partial disability" that was "permanent" and "moderate to marked"), but the notes failed "to provide any specific limitations to accompany these vague assessments."  AR 486 (citing AR 335–70, 410–42, 699–717).  The ALJ stated that Dr. Robinson's opinions were made in relation to Orcutt's workers' compensation case and the disability terminology was unique to New York's workers' compensation procedures and had "no equivalent in Social Security disability procedures or regulations."  AR 486.  The ALJ found that Dr. Robinson's opinions were vague, lacking specific limitations, and were rendered under New York's workers' compensation rules and regulations. AR 485–87.

The ALJ further determined that the limitations Robinson stated in the November 2009 RFC questionnaire were "out of proportion to Orcutt's "admitted activities of daily living that include part time work."  AR 486.  During the October 2013 hearing, Orcutt testified that she was working part-time at 7-11 for eight hours per week in two 4-hour shifts.  AR 488; *see also* AR 521– 23.  The Decision states that Dr. Robinson's sitting and standing limits were "not consistent with

her ability to work a 4-hour shift at 7-11." AR 486. Because objective examination findings did not warrant invasive treatment or support Dr. Robinson's opinion, the ALJ gave the doctor's opinions "very little weight overall, wherever they may appear in the record." AR 487.

The ALJ also considered the April 2007 opinion of Ralph Krutulis, D.C., Plaintiff's chiropractor, AR 487 (citing AR 232), and the October 2009 opinion of H. Jean Landcastle, MS, ANP, a nurse practitioner who worked under pain management consultant Joseph Catania, M.D., at the New York Pain Center (aka New York Spine & Wellness Center). AR 487 (citing AR 406–09). The ALJ found that chiropractors and nurse practitioners were not acceptable medical sources under social security regulations. *Id*. However, the ALJ acknowledged that sources other than acceptable medical sources may provide information to help understand how the claimant's impairments affect her ability to work. *Id*. (citing SSR 06-03p). The ALJ determined that the opinions rendered by Dr. Krutulis and Nurse Landcastle contrasted sharply with and were without support from the other evidence of record, although he cited to no specific record evidence. *Id*. The ALJ afforded Landcastle and Krutulis' opinions little weight in relation to how Ms. Orcutt's impairments affect her ability to work. *Id*.

The ALJ relied on the results of an orthopedic systems and neurological evaluation of Ms. Orcutt with Richard A. Cestkowski, D.O., on January 30, 2013. AR 487 (citing AR 776–91 (Consultative Examination Report)). Ms. Orcutt ambulated to the examining room and within the examining room without the use of an assistive device, and she had no difficulty arising from the examining table to the floor. *Id*. (citing AR 777–78). She ambulated with a non-antalgic gait and could heel and toe walk without difficulty. *Id*. (citing AR 778). She was able to kneel and squat, although needed support. *Id*. Orcutt reported pain as the doctor palpated the upper, mid, and lower thoracic areas. *Id*. (citing AR 777). Spasm of a mild degree was present in these areas with guarding to deep palpation. *Id*. Pain in the thoracic area was exacerbated with active motion of the thoracolumbar spine. *Id*.

Dr. Cestkowski opined that Orcutt could lift and carry 20 pounds occasionally and 10 pounds frequently. *Id*. (citing AR 780). He stated that she could sit, stand, or walk for one hour without interruption and, total in an 8-hour workday, she could sit for eight hours and stand and

walk for six hours. *Id.* (citing AR 781). He limited her overhead reaching to frequently bilaterally and her operation of foot controls to frequently bilaterally. *Id.* (citing AR 782). He opined that she can frequently balance and climb stairs and ramps, but could perform all other postural activities occasionally. *Id.* (citing AR 783). With regard to environmental limitations, the doctor stated she could never be exposed to unprotected heights, but she could have occasional exposure to extreme cold, extreme heat, and vibrations, and frequent exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, and dust, odors, fumes, and pulmonary irritants. *Id.* (citing AR 784). However, medication was not to be used while driving due to sedation. *Id.*

The ALJ afforded Dr. Cestkowski's opinion great weight due to his examination and diagnostic testing of Ms. Orcutt. AR 487. Although the ALJ found Dr. Cestkowski's opinion indicated that Orcutt's RFC was for light work, the ALJ extended "the maximum benefit of the doubt" to Orcutt and found her "capable of performing sedentary work with unlimited sitting and standing and/or walking 2 hours in an 8-hour workday, frequent balancing, occasional stooping, frequent overhead reaching bilaterally, and frequent operation of foot controls bilaterally." AR 488. Postural activities and environmental factors are not usually encountered in sedentary work. *Id.* (citing SSR 96-4p). Thus, the ALJ did not adopt Cestkowski's postural limitations for kneeling, crouching and crawling or his environmental limitations, which were unusual for sedentary work. *Id.* (citing SSR 96-9p).

### 2. The ALJ's Adverse Credibility Finding

The ALJ considered Ms. Orcutt's testimony and allegations of symptoms and limitations and made an adverse credibility finding. AR 485–86, 488–89. The Decision states the issue raised by Orcutt's allegations was "not the existence of pain but rather the degree of pain or other subjective symptoms" that she experienced. AR 485. The ALJ found that Orcutt's treatment history and the objective medical findings did not fully support her allegations. AR 488. Although objective clinical findings are not the only factor to be considered, the ALJ determined they did not support the degree of pain and functional limitations Orcutt alleged. *Id.* The Decision notes that Orcutt did not undergo surgery, "which doctors usually prescribe when conservative treatment fails." *Id.* The ALJ cited Dr. Robinson's treatment notes from April 2007, opining that "surgical

resolution to her injuries was not appropriate," *id.* (citing AR 227), and November 2007, stating "her pain was not considered severe enough for surgery and she did not have any pathological symptoms, just pain." AR 486 (citing AR 364). Based on these progress notes, the ALJ made a "reasonable inference" that "her symptoms were not as severe as alleged," which detracted from her "general credibility." AR 486. The Decision states there was a "consensus" that medications and overall treatment had controlled Ms. Orcutt's symptoms and "her protestations to the contrary, not objectively demonstrated, appear[ed] to be exaggerations." AR 488.

The ALJ also found that Ms. Orcutt's daily activities were inconsistent with disabling levels of pain. AR 488. She testified at the October 2013 hearing that she worked at 7-11 part-time, twice per week, four hours each day, about three days apart. AR 488; *see also* AR 521–23. Although this work did not constitute disqualifying substantial gainful activity, the ALJ determined it indicated Orcutt's "daily activities have, at least at times, been somewhat greater than [she] has generally reported." AR 488. The ALJ therefore found she was "able to work when she needs to work." *Id.* The ALJ also noted that workers' compensation issues during their pendency "may have been disincentive to seeking employment." *Id.* When Orcutt was not working, she sewed and performed some housework. AR 488, 523–24. She testified that she and her husband both perform chores, and the Decision also states she testified that "her husband, who receives disability for multiple sclerosis, performs the 'heavy work'." AR 488, 524–25. The ALJ found that Orcutt's testimony that her disabled husband does the "heavy work" was not credible and further diminished her credibility. AR 488.

The Decision acknowledges that Ms. Orcutt described "fairly limited" daily activities. AR 489. However, the ALJ determined that two factors weighed against considering these allegations to be strong evidence in favor of finding her disabled. *Id.* The Decision states: (1) "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty," and (2) even if Orcutt's daily activities were truly as limited as alleged, it was "difficult to attribute that degree of limitation to [her] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed" in the Decision. *Id.* The ALJ therefore determined that Orcutt's reported limited daily activities were "outweighed by

the other factors discussed in this decision." *Id.*

For these reasons, the ALJ considered but gave little probative weight to Orcutt's testimony. AR 489. The Decision states that "the paucity of evidence" did not support Orcutt's allegation of total disability. *Id.* Her activities of daily living in conjunction with the medical evidence demonstrating minimal abnormalities, reflected "a limited functional capacity but not that of an individual unable to sustain all regular and continuing work due to medically determinable impairments." *Id.* Nevertheless, the Decision states that Orcutt's RFC assessment afforded her the "maximum benefit of doubt" by deeming her capable of sedentary work. *Id.* The ALJ found that Orcutt's allegation of symptoms and limitations that would preclude her from performing the activities described in the ALJ's RFC were disproportionate to the objective findings of the medical record, inconsistent with the medical opinion evidence, exaggerated, and not fully credible. AR 489.

### B. Step Four – Ability to Perform PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform his or her PRW. 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work a claimant performed within the last 15 years, either as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b). In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965. If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

The Department of Labor publishes the Dictionary of Occupational Titles (DOT), which provides "detailed physical requirements for a variety of jobs." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.3 (9th Cir. 2009) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007)). The ALJ and/or a vocational expert utilizes the DOT in determining whether a claimant, given her RFC, can perform her PRW. *Id.* (citing 20 C.F.R. § 404.1560(b)(2)).

At step four, the ALJ concluded that Orcutt is capable of performing her PRW as an accounting clerk. AR 489. He found that Orcutt's PRW is performed at a sedentary level of

exertion, skilled work with a specific vocational profile ("SVP") of 5.[6]  *Id*.  After comparing

Orcutt's RFC with the physical and mental demands of her PRW, the ALJ found that Orcutt is able

to perform her PRW as it is generally performed.  *Id*.  Based on this finding, the ALJ determined

that she has not been disabled at any time from April 5, 2007, the alleged onset date, through

December 31, 2012, the date last insured.  AR 490.

## III.    THE PARTIES' POSITIONS ON APPEAL

### A.    Orcutt's Position

Ms. Orcutt seeks reversal and remand of the Decision on the grounds that the ALJ's RFC

assessment, adverse credibility finding, and step four determination that Plaintiff could perform

her PRW are unsupported by substantial evidence.  Pl.'s Mot. (ECF No. 19); Reply (ECF No. 23).

She claims the ALJ erroneously discounted the opinions of Orcutt's treating sources and

improperly evaluated Orcutt's credibility.  Orcutt contends the RFC determination is unsupported

by substantial evidence because the ALJ failed to discuss key evidence, improperly evaluated the

evidence, and improperly relied on examining medical expert testimony to discount the opinions

of treating providers.

Ms. Orcutt argues that the ALJ's reasons for discounting Dr. Robinson's opinion are not

supported by the record and are impermissibly vague to justify rejecting a treating source opinion.

The motion cites extensive portions of the medical evidence to support her arguments.  In

November 2009, Dr. Robinson completed an RFC questionnaire indicating significant limitations,

yet the ALJ found they were out of proportion to Orcutt's activities of daily living.  Orcutt argues

the ALJ failed to explain how her activities in 2013 (working a 4-hour shift twice a week at 7-11)

contradict Robinson's 2009 opinion.  The ALJ did not ask Dr. Robinson for an updated assessment

of Orcutt's functional capacity, even though the remand order allowed the ALJ to request "further

clarification of the opinions."  AR 480.  An update may have explained any discrepancy between

Robinson's 2009 opinion and Orcutt's daily activities in 2013.  Orcutt argues that working 8 ½

hours per week out of financial desperation does not preclude a disability finding.  The ALJ failed

to evaluate Dr. Robinson's opinion in context, rendering his reasoning vague and inadequate.

---

[6]  The DOT describes the accounting clerk position at DOT 216.482-010.  AR 489.

1    Ms. Orcutt further asserts the ALJ failed to specify any evidence that tends to contradict

2    Dr. Robinson's findings.  Mot. at 16–17.  The Decision states that objective examination findings

3    did not warrant invasive treatment nor support Dr. Robinson's opinion.  However, Orcutt's

4    treatment notes evidence symptoms interfering with her work status, and the doctor consistently

5    opined that she was disabled.  Orcutt's treatment notes and records from the pain management and

6    chiropractor's offices stated similar findings to those of Dr. Robinson (*e.g.*, herniated discs, limited

7    range of motion, pain, tenderness, and back spasms).  Mot at 16 (citing AR 184–86, 207, 211, 214,

8    217, 220, 222–26, 231, 253, 307, 309, 336–37, 339–40, 342–44, 349, 351–52, 356–57, 359–60,

9    388–89, 416–18, 421–22).  In addition, two treating sources[7] rendered opinions similar to Dr.

10    Robinson's.  The ALJ rejected these similar opinions as "without support from other evidence of

11    record," AR 487, but Orcutt contends the ALJ failed to explain why the similar findings and

12    opinions did not support one another.  The ALJ's vague conclusions were contradicted by the

13    record.  Therefore, the ALJ failed to provide specific and legitimate reasons for rejecting Dr.

14    Robinson's opinion, and his Decision is therefore not supported by substantial evidence.

15    Additionally, Orcutt argues that the ALJ's adverse credibility determination is erroneous

16    because the ALJ improperly speculated about the evidence.  The ALJ found that because Orcutt

17    did not undergo surgery, "a reasonable inference, therefore, is that her symptoms were not as

18    severe as alleged."  AR 486.  Ms. Orcutt contends the ALJ impermissibly used the standard of a

19    "reasonable inference" in place of objective medical evidence and/or clarification from Dr.

20    Robinson.  Nothing supports the ALJ's inference that a doctor's recommendation against surgery

21    indicates that symptoms are not as severe as alleged.  As such, the ALJ's inference is speculation

22    and the adverse credibility determination is not supported by substantial evidence.

23    Lastly, Orcutt asserts that the step four determination is not supported by substantial

24    evidence because the ALJ erred in relying on vocational testimony elicited in response to an

25    incomplete hypothetical question.  Mot. at 18.  Based on the errors in evaluating Orcutt's RFC and

26    _____

27    [7] Nurse Landcastle was a nurse practitioner working with Dr. Catania and Dr. Krutulis was Ms. Orcutt's
chiropractor.  Although the regulations do not deem either an "acceptable medical source" equivalent to a
treating physician, 20 C.F.R. § 404.1513(a), both are "other sources" that may be used to show the severity

28    of a claimant's impairments and how they affect her ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d).

credibility, the ALJ posed an incomplete hypothetical to the vocational expert. Orcutt maintains that the opinions of her treating providers indicate she is not capable of sedentary work. However, the vocational expert provided testimony in response to a hypothetical in which the individual was presumed able to perform the demands of a sedentary job. AR 489. Orcutt's RFC was therefore inconsistent with the medical opinions, which amounts to a critical error. Because the ALJ relied on vocational testimony elicited in response to an incomplete hypothetical question, the step four finding is not supported by substantial evidence. For these reasons, Ms. Orcutt asks the court to remand this matter for further proceedings, including a de novo hearing and decision.

### B. The Commissioner's Position

The Commissioner asks the court to affirm the Decision asserting the ALJ gave appropriate reasons for rejecting Dr. Robinson's opinion, properly assessed Ms. Orcutt's credibility, and correctly determined that she is not disabled. Cross-Mot. & Resp. (ECF Nos. 22, 24). The Commissioner maintains the Decision is supported by substantial evidence and free of legal error.

The Commissioner claims the ALJ provided specific and legitimate reasons for rejecting Dr. Robinson's opinion by finding that Orcutt's testimony regarding part-time work did not support the doctor's opinion. Cross-Mot. at 5–7. The Decision found that Dr. Robinson's opinion was inconsistent with Orcutt's admitted ability to work a 4-hour shift at 7-11. AR 486. The Commissioner contends her admissions showed that she could sit, stand, and walk longer than Dr. Robinson opined. Although the doctor's opinion was issued almost four years before Orcutt's testimony, she has alleged disability since April 2007 and does not allege that her condition has improved. Thus, the Commissioner argues the timing does not undermine the ALJ's finding.

Additionally, the ALJ found the objective findings in the record overall did not support Dr. Robinson's opinion and did not warrant invasive treatment. AR 486–87. The ALJ noted that Dr. Robinson did not recommend surgery and he made normal findings when examining Orcutt and found these to be inconsistent with his opinion that she had significant limitations precluding work. AR 486 (citing AR 207–08, 413). The Decision therefore states acceptable reasons for rejecting Dr. Robinson's opinion. The Commissioner further contends that the February 2013 opinion of Dr. Cestkowski "constituted substantial evidence upon which the ALJ could rely" because

Cestkowski examined Orcutt, made normal findings, and opined that Ms. Orcutt was capable of working with certain limitations. Cross-Mot. at 8. Dr. Cestkowski's findings were inconsistent with Dr. Robinson's. The ALJ assigned Dr. Cestkowski's opinion greater weight than to Dr. Robinson's opinion. The Commissioner maintains that Dr. Cestkowski's conflicting opinion "provided a further basis for rejecting Dr. Robinson's opinion." *Id*.

The Commissioner asserts the ALJ gave multiple, legally sufficient reasons for rejecting Ms. Orcutt's subjective symptom testimony. Despite Orcutt's allegations of disabling pain, the record showed normal findings in her gait, sensation, reflexes, strength, and range of motion. Cross-Mot. at 9. The Decision states the objective evidence did not support Orcutt's allegations. AR 485. Her allegations also conflicted with medical opinions by an independent medical examiner, AR 384, and a state agency medical consultant, AR 330–33. The ALJ further relied on Orcutt's part-time work while alleging disability to discredit her pain testimony. AR 521–22, 531. In addition, the ALJ found that Orcutt's most common treatments of medication and home exercise were generally conservative and effective. AR 485–86. When she had "more invasive procedures such as injections, she reported up to eight weeks of relief." Cross-Mot. at 10 (citing AR 719). To the extent the ALJ may have erred in considering a lack of surgery as a basis for an adverse credibility finding, such error would be harmless because the ALJ offered other reasons to support the adverse credibility finding.

## ANALYSIS AND FINDINGS

This is an unusual case. The parties stipulated to remand the first ALJ decision that was partially favorable to Ms. Orcutt for de novo review. The first ALJ found she was not disabled beginning April 5, 2007, but became disabled beginning June 18, 2009, as she approached the advanced age of 50. On de novo review the second ALJ found that she was not disabled from her alleged onset date of April 5, 2007, through December 31, 2012, her date last insured.

The Appeals Council's order reversing and remanding the first decision contained a comprehensive and detailed description of the deficiencies in the first decision and directed the second ALJ to consider and evaluate specific treating and medical source evidence in the record, develop the record, and evaluate Orcutt's credibility.

On remand counsel for Ms. Orcutt attempted to limit de novo review to the period between April 5, 2007, and June 18, 2009. However, the second ALJ found that because the first ALJ's decision had been reversed and remanded in its entirety he was required to decide whether Orcutt was disabled from the alleged onset date to her date last insured. Orcutt does not challenge this finding on judicial review.

The court finds the ALJ committed reversible error by failing to provide clear and convincing reasons for rejecting Orcutt's treating source opinions and failing to give appropriate weight to other medical source opinions. The ALJ also committed reversible error in failing to provide clear and convincing reasons for rejecting Ms. Orcutt's subjective symptom testimony.

I.    THE ALJ'S RFC ASSESSMENT INDICATING ORCUTT COULD RETURN TO HER PRW IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE THE ALJ ERRED IN WEIGHING THE OPINIONS OF HER TREATING SOURCES

Ms. Orcutt's motion argues the ALJ improperly weighed the opinions of Dr. Robinson, Dr. Krutulis, and Nurse Landcastle. The following summarizes the opinions of these treating sources and analyzes the portions of the Decision discussing each opinion.

**A.  Stephen Robinson, M.D.**

The record shows that Orcutt treated with Dr. Robinson from April 2007 to June 2012. AR 206–27, 335–70, 387–90, 410–42, 699–717. Orcutt complained of severe thoracic spine pain, moderate tenderness, shooting muscle spasms, stiffness, numbness, limited range of motion, difficulty lifting her leg, and an inability to sit for long periods of time. *E.g.*, AR 219–20, 337, 339–40, 346, 351–52, 357, 362–63.

Dr. Robinson's April 2007 treatment notes for Orcutt's first visit document his recommendation that she continue with chiropractic care for her chronic back pain as he did "not see an indication presently for either nerve blocks or surgery," but "these may be necessary" if Orcutt did not improve. AR 227. By late June 2007, her pain had significantly increased, and Dr. Robinson changed her work status to "total disability – temporary." AR 219–21. She tried physical therapy but some exercises "significantly aggravated her back pain." AR 207. Chiropractic care only gave Orcutt transient relief; thus, Dr. Robinson recommended injections and a consultation with a pain management clinic. AR 215, 217–18. Orcutt reported no pain relief

from her first nerve block at T7-8, AR 210–11, and little to no relief from additional injections, AR 206–07, 352, 356, 716 (noting that nerve blocks provided "some temporary improvement" for a month at most).

Although Ms. Orcutt reported "good days and bad days," she complained of persistent pain at each appointment. *E.g.*, AR 362. In November 2007, Dr. Robinson noted, "In general, the progression of the problem seems to be getting worse." AR 362. The doctor stated, "At this point in time, her pain is not severe enough for surgery and she does not have any pathological symptoms, just the pain." AR 364. She continued to treat with the chiropractor and pain clinic, but the "quite severe mid thoracic pain" remained. AR 357. A February 2008 treatment note states that she was "not interested in surgical evaluation" at that time. AR 357. However, in September 2008, Dr. Robinson began noting that Ms. Orcutt "likely will be a candidate for surgical treatment" if treatment with the pain clinic was not helpful. AR 338, 389, 418, 422, 429, 434.

In August 2008, Dr. Robinson assessed a "moderate-to-marked permanent partial disability secondary to her thoracic disc herniation" pursuant to New York's workers' compensation guidelines. AR 340 (noting she "continued to be quite disabled by the ongoing pain"). The doctor found that Orcutt's work injury was a "competent medical cause" of her injury. AR 429. He noted that the "history of injury/illness were consistent with his objective findings and Orcutt's complaints were "consistent with the history of the injury/illness." AR 429. Although her symptoms remained unchanged, they were stable with injections by May 2010. AR 714. Dr. Robinson instructed her to continue with treatment at the pain clinic for the time being. AR 714.

Dr. Robinson completed an RFC questionnaire form in November 2009. AR 439–42. The form states that Orcutt's prognosis was "guarded." AR 439. The doctor noted that her impairments had lasted or can be expected to last at least twelve months. AR 440. With regard to her functional limitations, he opined that Orcutt could (i) walk only one city block without rest or severe pain, (ii) sit or stand for 20 minutes at one time, and (iii) sit/stand/walk for less than two hours during an 8-hour work day. AR 440–41. Dr. Robinson indicated Orcutt would need a job that permitted shifting positions at will from sitting, standing, or walking, and an 8-hour work day would need to include periods of walking around and unscheduled breaks. AR 441. He also

opined that Orcutt would be able to lift and carry less than 10 pounds occasionally, but never anything 10 pounds or more. AR 442. Ms. Orcutt would never be able to twist, stoop, bend, crouch, squat, or climb ladders, but would be able to climb stairs occasionally. AR 442. Her symptoms were likely to produce "good days" and "bad days." AR 442. Dr. Robinson stated that April 5, 2007, the date of Orcutt's injury, was the earliest date applicable to the form. AR 442.

The ALJ did not afford controlling weight to Robinson's opinion and assigned it very little weight overall finding his opinion was vague, lacking specific limitations, not supported by his own objective findings, and was contradicted by Orcutt's admitted daily activities. AR 486–87.

Dr. Robinson was Orcutt's treating orthopedic surgeon. Generally, a treating physician's opinion is entitled to more weight than an examining physician's, and an examining physician's opinion is entitled to more weight than a non-examining reviewing physician. *Lester v. Chater*, 81 F.3d, 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527(d). A treating physician's opinion is afforded great weight because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Social security regulations give more weight to specialists' opinions on matters related to their specialty over that of non-specialists. 20 C.F.R. § 404.1527(d)(5).

Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The regulations expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is contradicted and not entitled to controlling weight, the ALJ must still determine what weight to give the opinion by considering factors such as: (i) the length of the treatment relationship, (ii) frequency of examination, (iii) the nature and extent of the treatment relationship, (iv) supportability of the medical opinion, (v) consistency with the record, and (vi) the physician's specialization. *Trevizo v. Berryhill*, 871 F.3d 664, 675–76 (9th Cir. 2017) (citing 20 C.F.R.

§ 404.1527(c)(2)–(6)); *Orn v. Astrue*, 495 F.3d 625, 631–32 (9th Cir. 2007). A failure to consider these factors alone constitutes reversible legal error. *Trevizo*, 871 F.3d at 676.

The ALJ did not expressly find that Dr. Robinson's opinion was contradicted by any other medical source's opinion. He found Dr. Robinson's opinion was inconsistent with his own objective findings on physical examination citing Exhibit 4F/2-3. This is a portion of Dr. Robinson's medical record for an office visit on September 27, 2007. At this visit Orcutt reported she had stopped going to physical therapy because her pain was increasing, AR 206, and that since her last visit she had had three nerve block injections from the pain center and had received about three days of relief from the last one but almost no relief from the first two, AR 207. However, Dr. Robinson noted her station and gait were normal. *Id.* She had moderate tenderness to palpation at T-7 and mild right sided paraspinal tenderness. *Id.* Motor exam of both lower extremities was 5/5. *Id.* Sensory exam of the left and right lower extremities was normal. AR 208. His assessment was herniated disc thoracic spine with no myelopathy and pain thoracic spine. *Id.* He opined chiropractic treatment, mild home exercises and a home TENS unit would give her a moderate amount of pain relief and told her follow up with a visit in six weeks. *Id.*

Dr. Robinson's November 10, 2009 residual functional capacity opinion is inconsistent with Dr. Cestkowski's 2013 opinion on various points. *Compare* AR 439–42 *with* AR 776–91. The Decision indicates the ALJ considered Dr. Robinson's opinion and whether it was consistent with the record in finding that the opinion was not entitled to controlling weight. AR 486–87. However, the ALJ did not consider the length of Orcutt's treating relationship with Dr. Robinson, frequency of examination, the nature and extent of the treatment relationship, or Dr. Robinson's specialization. Orcutt treated with Dr. Robinson 28 times over the course of more than five years (April 2007 to June 2012).[8] Her treatment began with very frequent visits (once per week or once a month) and slowly tapered down (once every six weeks, two months, three months, and six months). The record shows that Orcutt's other treating providers communicated with and

---

[8] The record contains treatment notes for April 20, June 1, June 8, June 22, July 16, August 27, September 27, November 8, 2007; January 15, February 26, April 3, May 15, June 26, August 1, September 15, October 27, November 3, December 8, 2008; January 14, February 9, April 14, July 14, November 10, 2009; May 11, November 16, 2010; May 17, November 15, 2011; and June 6, 2012.

coordinated treatment and medications with Dr. Robinson. Robinson is an orthopedic surgeon; thus, he is a specialist in the area of medicine at issue in this case. The ALJ did not provide clear and convincing reasons supported by substantial evidence in the record for rejecting Dr. Robinson's opinion.

Dr. Cestkowski's consultative examination opinion dated January 30, 2013, was afforded great weight based on his examination and diagnostic testing of Ms. Orcutt. AR 487. Dr. Cestkowski found that Orcutt had the RFC to perform light work. His medical source statement, AR 780–85, opines that the limitations he found would last for 12 consecutive months. AR 785. However, neither his report nor his medical source assessment addressed her RFC from the alleged date of onset through the date of his examination and evaluation on January 30, 2013. The ALJ does not explain how Dr. Cestkowski's 2013 examination and evaluation contradicts Dr. Robinson's opinions about her RFC from April 5, 2007, through the date of Dr. Robinson's November 10, 2009 RFC opinion or through December 31, 2012, her date last insured.

This court may not affirm the ALJ's Decision "on a ground upon which he did not rely." *Trevizo*, 871 F.3d at 675 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)). An ALJ's findings should be stated with enough specificity so that a court does not speculate as to the basis of the findings when determining if the findings are supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140–41 (9th Cir. 2014). Cursory findings of fact lacking explicit statements about what portions of evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). An ALJ's findings should be comprehensive, analytical, and include a statement explaining the "factual foundations on which the ultimate factual conclusions are based." *Id.*; *see also Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (an ALJ need not "discuss every piece of evidence" but must explain why significant or probative evidence was rejected).

Here, the ALJ's findings are not specific enough for the court to determine the reasons for rejecting Dr. Robinson's opinion about her RFC from the alleged date of onset to the date of his RFC assessment which he opined would last 12 consecutive months or more. The court may not speculate as to the basis of the ALJ's findings in determining whether they are supported by

1    substantial evidence.  Additionally, as Orcutt's reply correctly points out, the court may not rely

2    on the Commissioner's post-hoc factual support for the ALJ's Decision, which the ALJ did not

3    cite.  The ALJ may or may not have relied on those portions of Dr. Robinson's medical records

4    the Commissioner cites in reaching his decision.  The court simply cannot tell.  Moreover, the

5    court cannot discern whether or how the ALJ weighed the evidence cited by the Commissioner.

6        The ALJ also erred in summarily rejecting portions of Dr. Robinson's opinion and/or

7    treatment notes based on his use of terminology from New York's workers' compensation rules

8    and regulations.  Dr. Robinson's progress notes repeatedly state that Orcutt was "temporarily and

9    partially disabled" or she was under a "partial disability" that was "permanent" and "moderate to

10   marked."  AR 486 (citing AR 335–70, 410–42, 699–717).  The ALJ correctly stated that a

11   disability determination in a state worker's compensation case is not binding, controlling, or

12   determinative in a social security disability benefits case.  *See* 20 C.F.R. § 404.1504; 191 A.L.R.

13   Fed. 411 (2004).  The ALJ found that Dr. Robinson's opinions were rendered under New York's

14   workers' compensation, which had "no equivalent in Social Security disability procedures or

15   regulations."  *Id*.  While the ALJ correctly found that a disability determination under a state

16   worker's compensation rules are not binding in a social security benefits case, the ALJ was

17   required the translate terms of art used in the worker's compensation context to assess their

18   implication in the social security disability context.

19       It is undisputed that workers' compensation eligibility rules "are directed to the worker's

20   prior employment and measure the ability to perform that employment rather than using the

21   definition of disability in the Social Security Act."  *Gray v. Chater*, 903 F. Supp. 293, 301 n.8

22   (N.D.N.Y. 1995).  Thus, certain workers' compensation concepts may not have a social security

23   equivalent.  *E.g.*, *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985) ("partial disability" does

24   not exist in Social Security cases).  When evaluating medical opinions issued for purposes of

25   workers' compensation in the context of a social security disability benefits case, the ALJ must

26   translate terms of art contained in such medical opinions into the corresponding social security

27   terminology in order to accurately assess the implications of those opinions for the social security

28   determination.  *Knorr v. Berryhill*, 254 F. Supp. 3d 1196, 1212 (C.D. Cal. 2017) (citing *Booth v.*

23

*Barnhart*, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002)); *cf. Desrosiers v. Sec. Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988) (holding that the ALJ erred in relying on two doctors' opinions that plaintiff could no longer perform heavy work, submitted in his workers' compensation case, to conclude that he could still perform less than heavy work).

The ALJ did not attempt to translate or assess the terms Dr. Robinson used in the workers' compensation context to the social security disability context. The fact that Dr. Robinson rendered some of his opinions in a workers' compensation context was not a legitimate reason to entirely reject the doctor's opinions or his assessment of Orcutt's RFC.

Finally, the Appeals Council order remanding the case to the ALJ for further administrative proceedings in accordance with the fourth sentence of § 205(g) of the Social Security Act directed the ALJ to consider Dr. Robinson's medical opinion indicating further evaluation of his opinion was required. The ALJ was directed to evaluate the medical evidence of record in accordance with 20 C.F.R. 404.1529, and specifically to give further consideration to the November 10, 2009 treating source opinion of Dr. Robinson pursuant to the provisions of 20 C.F.R. § 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. AR 543–46. The order provided that the ALJ "may request the treating source to provide additional evidence and/or further clarification of the opinion" pursuant to 20 C.F.R. 404.1512 and "may enlist the aid in cooperation of the plaintiff's representative in developing evidence from the claimant's treating source." AR 545. The administrative record does not reflect any effort made by the ALJ to develop the record in this regard or to seek additional evidence or clarification of Dr. Robinson's opinions.

**B. Ralph Krutulis, D.C.**

Orcutt treated with chiropractor Ralph Krutulis, D.C., from April 2007 until at least March 2008. AR 228–328. Treatment notes indicate that she experienced constant, extreme pain in her left back with radiation around her left side, moderate to severe tenderness in the thoracic region, muscle spasms bilaterally, shortness of breath, loss of normal sleep, lethargy. AR 230–31, 242, 252–53, 256. In an initial evaluation report for workers' compensation, signed under the penalty of perjury, Dr. Krutulis observed objective observance of pain and tenderness and decreased

function.  AR 232.  The chiropractor stated he was placing Orcutt on "disability" beginning April 10, 2007, but it was too early to determine whether she would have "any residuals of permanent disability."  *Id*.  Based on subsequent MRI findings, Dr. Krutulis informed Orcutt's employer that she was "under total disability" and referred her to Dr. Robinson for an orthopedic surgery consultation.  AR 235.  In a letter to Dr. Robinson, Dr. Krutulis stated that Orcutt was "adverse to surgery, and if possible, conservative care may work in the long run."  AR 239.  Upon re-examination in June 2007, Dr. Krutulis opined that she was "currently not medically stationary" and her prognosis was fair due to the unknown status of her thoracic disc.  AR 253.

Although a chiropractor is not an acceptable medical source under social security regulations, other sources may provide information to help understand how the claimant's impairments affect her ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d).  To reject or discount evidence from "other sources," the ALJ must give "germane reasons" for doing so, *i.e.*, a relevant and appropriate explanation.  *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)).  The Ninth Circuit has repeatedly found that an ALJ commits reversible error where the decision fails to explain or provides little to no facts to support the stated reason for discounting the opinion of other source opinions.  *See, e.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (ALJ erroneously discounted treating nurse practitioner and licensed social worker's opinions where a "holistic review" of the record did not reveal an inconsistency between their opinions and claimant's daily activities).

The ALJ's assessment of Dr. Krutulis' opinion is not supported by substantial evidence.  The ALJ acknowledged that other sources may provide information to help understand how the claimant's impairments affect her ability to work.  AR 487 (citing SSR 06-03p).  The ALJ found that Dr. Krutulis' opinion contrasted sharply with and was without support from the other evidence of record.  *Id*.  However, the ALJ did not cite to any evidence in the record supporting his finding.  A holistic review of the record indicates Krutulis' objective findings, such as pain and tenderness in Orcutt's thoracic spine and decreased function, AR 232, were consistent with the findings and opinions of Drs. Robinson and Catania.  *See, e.g.*, AR 207, 211, 214, 217, 220, 222–26, 307, 309, 336–37, 339–40, 342–44, 349, 351–52, 356–57, 359–60, 388–89, 416–18, 421–22.  The ALJ failed

to explain why similar findings and opinions by Drs. Robinson and Catania did not support one another. The ALJ did not specify what medical evidence contradicted Dr. Krutulis' opinion or give appropriate reasons for discounting Dr. Krutulis' opinion. *See Ghanim*, 763 F.3d at 1161. The ALJ also did not develop the record or request additional evidence or clarification of Dr. Krutuilis' opinions.

### C. Nurse Landcastle and Joseph Catania, M.D.

Ms. Orcutt treated with Joseph Catania, M.D., and multiple nurse practitioners at the New York Pain Center (aka New York Spine & Wellness Center) from July 2007 to December 2012. AR 306–11, 392–409, 718–775; *see also* AR 180–81, 372–79 (records from injections performed at St. Joseph's Hospital Health Center). Orcutt complained of thoracic spine pain including burning, muscle spasms and tenderness, aching, decreased range of motion, shortness of breath, blurred vision, loss of sleep, anxiety, vertigo, and depressive symptoms. AR 306, 392, 395, 397, 399, 403, 727, 752. Dr. Catania administered thoracic interlaminar epidural nerve blocks to Orcutt in August and September 2007, but she had no reduction in pain. AR 180–81, 310. A thoracic paraspinous muscle trigger point injection was administered in January 2008, but this also provided no relief. AR 306, 392. Dr. Catania completed a second trigger point injection in April 2008, which helped Orcutt for two weeks. AR 394–95. A nerve block in May 2009 was described as "minimally helpful." AR 403.

An August 11, 2009 physical examination revealed that Orcutt was "very tender even to light touch" and had "decreased range of motion and pain with flexion, extension, and rotation." AR 403. Dr. Catania stated, "It is my opinion the patient's injury is related to her accident. Her complaints are consistent with the history of injury. The patient's history of injury is consistent with my objective findings today. The patient's temporary impairment is moderate at 50%." AR 404 (signed by Dr. Catania and H. Jean Landcastle, MS, ANP).

Nurse Landcastle completed an RFC questionnaire form in October 2009. AR 406–09. Regarding clinical findings, the form states that an MRI of Orcutt's thoracic spine revealed degenerative spondylosis, annular bulges at T6-7 and T7-8, and a paramedian disc herniation associated with osteophyte. AR 406. Orcutt's symptoms were identified as constant pain, sharp,

aching, burning, spasm, and fatigue. *Id.* Positive objective signs were noted as reduced range of motion, abnormal gait, tenderness, muscle spasm, and impaired sleep. AR 407. Nurse Landcastle indicated that emotional factors also contributed to Orcutt's symptoms and functional limitations. *Id.* (noting chronic pain, decreased ability to function in a daily routine, and reactive depression). A question asking how often during a typical workday was Orcutt experiencing pain and other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks stated "constantly" in response. *Id.* Drowsiness and decreased concentration were side effects of her medication. *Id.* Her prognosis was "poor." AR 406.

Nurse Landcastle further noted that Orcutt's impairments had lasted or could be expected to last at least twelve months. AR 407. With regard to her functional limitations, the nurse opined that Orcutt could (i) walk zero city blocks without rest or severe pain, (ii) sit or stand for 15 minutes at one time, and (iii) sit, stand, and walk for about two hours during an 8-hour work day. AR 407–08. Landcastle indicated Orcutt would need a job that permitted shifting positions at will from sitting, standing, or walking, and an 8-hour work day would need to include periods of walking around and unscheduled breaks. AR 408. The nurse also opined that Orcutt would be able to lift and carry less than 10 pounds rarely, but never anything 10 pounds or more. AR 409. Orcutt would never be able to twist, stoop, bend, crouch, squat, or climb ladders, but would be able to climb stairs occasionally. *Id.* Her symptoms were likely to produce "good days" and "bad days." *Id.* On average, Orcutt would likely to be absent from work more than four days per month as a result of her impairments or treatment. *Id.* Nurse Landcastle stated that July 11, 2007, the date of Orcutt's first appointment, was the earliest date applicable to the form. *Id.*

The ALJ's assessment of Nurse Landcastle's opinion was also unsupported by substantial evidence. To the extent a nurse practitioner is working closely with, and under the supervision of, a treating physician, his or her opinion is an "acceptable medical source" on an application for Social Security disability insurance benefits. *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing 20 C.F.R. §404.1513(d)(1); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)). The mere fact that a treating nurse practitioner is not a medical source is not a legally sufficient reason to reject her medical opinion. *Gonzales v. Berryhill*, 261 F. Supp. 3d 1085, 1098

1  (D. Or. 2017) (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)).

2       The ALJ treated Nurse Landcastle's report as other source opinion. AR 487. However,

3  the record demonstrates that the nurse practiced under the supervision of Dr. Catania as well as

4  Carri Allen Jones, M.D., Jason Lok, M.D., Robert L. Tiso, M.D., Eric Tallarico, M.D., and Mary

5  C. Trusilo, M.D. AR 395–98, 403–04, 723–24, 731–32, 739–40, 743–44, 747–48, 751–53, 756–

6  57, 760–61, 764–65. Each of these physicians was a pain management consultant working in the

7  same practice as Dr. Catania who also treated Orcutt and co-signed Nurse Landcastle's treatment

8  notes. Nurse Lancastle signed numerous medical records "for Joseph A. Catania, M.D." *See, e.g.,*

9  AR 394–98. The ALJ did not consider whether Landcastle acted as the agent of these pain

10  management physicians and should be considered a medically acceptable source.[9] *Taylor*, 659

11  F.3d at 1234. But even under the standard for other sources, the ALJ failed to give appropriate

12  reasons for rejecting Nurse Landcastle's opinion.

13       An ALJ commits reversible error where the decision fails to explain or provides little to no

14  facts to support his reasons for discounting other source opinion. *See, e.g.*, *Popa v. Berryhill*, 872

15  F.3d 901, 906–07 (9th Cir. 2017) (ALJ offered no facts to explain why limitations assessed by

16  treating nurse practitioner would prevent claimant from grocery shopping or attending church or

17  support a suspicion that nurse's opinion was based on "sympathy"); *Dale v. Colvin*, 823 F.3d 941,

18  944–45 (9th Cir. 2016) (ALJ did not provide appropriate reasons for discounting nurse

19  practitioner's opinion where ALJ rejected *entire* opinion based on an inconsistency between only

20  one part of her opinion and medical evidence); *Ghanim*, 763 F.3d at 1161 (a "holistic review" of

21  the record did not reveal an inconsistency between the opinions of a treating nurse practitioner and

22  social worker and claimant's daily activities).

23       The ALJ concluded that Landcastle's opinion contrasted sharply with and was without

24  support from the other evidence of record. AR 487 (citing AR 406–09 (Oct. 2009 RFC

---

[9] The court also notes that the Decision does not address the August 11, 2009 opinion of Dr. Catania stating, "It is my opinion the patient's injury is related to her accident. Her complaints are consistent with the history of injury. The patient's history of injury is consistent with my objective findings today. The patient's temporary impairment is moderate at 50%." AR 404 (signed by Dr. Catania and Nurse Landcastle). The remand order by the Appeals Council instructed the ALJ to consider all treating source opinions and medical source opinions in the record. AR 545.

questionnaire)).  However, the ALJ did not cite any portion of record evidence to support his finding.  *Id.*  Orcutt treated at the pain clinic at least 30 times between from July 2007 to January 2012.  AR 306–11, 392–409, 718–775.[10]  Nurse Landcastle personally treated Orcutt on at least 13 occasions.  AR 395–98, 403–04, 723–24, 731–32, 739–40, 743–44, 747–48, 751–53, 756–57, 760–61, 764–65.  Dr. Catania administered at least eight thoracic interlaminar epidural nerve blocks and thoracic paraspinous muscle trigger point injections to Orcutt.  AR 768–75.

The ALJ characterized Orcutt's treatment as conservative and inferred her pain was not as severe as she claimed because she did not have surgery.  The Ninth Circuit has described steroid injections, block injections, referrals to an orthopedic surgeon, and recommendations for surgery as "more aggressive" treatments for back pain.  *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017).  Nurse Landcastle stated that clinical findings were degenerative spondylosis, annular bulges at T6-7 and T7-8, and a paramedian disc herniation associated with osteophyte and she identified positive objective signs of reduced range of motion, abnormal gait, tenderness, muscle spasm, and impaired sleep.  AR 406–07.  These were consistent with the objective findings and opinions of Dr. Catania, AR 404, as well as Drs. Robinson and Krutulis.  *See, e.g.*, AR 207, 211, 214, 217, 220, 222–26, 231–32, 336–37, 339–40, 342–44, 349, 351–52, 356–57, 359–60, 388–89, 416–18, 421–22.  The ALJ did not specify what medical evidence contradicted Nurse Landcastle's opinion, and this failure constituted legal error.  *See Popa*, 872 F.3d at 906–07; *Ghanim*, 763 F.3d at 1161.  The ALJ also did not develop the record or request additional evidence or clarification of the opinions of Dr. Catania or Nurse Landcastle.

## II.  THE ALJ FAILED TO PROVIDE CLEAR AND CONVINCING REASONS FOR DISCREDITING MS. ORCUTT'S CREDIBILITY

Orcutt also seeks reversal and remand of the ALJ's decision on the grounds that the ALJ failed to properly assess her credibility.  Pl.'s Mot. at 17–18.  The Ninth Circuit has established a

---

[10]  The record contains treatment notes for July 11, October 4, 2007; February 8, March 5, April 2, May 14, June 25, August 20, October 1, 2008; August 11, December 14, December 22, 2009; February 15, March 25, May 27, June 15, August 4, September 23, November 9, December 13, December 16, 2010; March 14, March 28, April 28, July 5, July 12, August 15, November 15, December 6, 2011; and January 20, 2012.  It appears that treatment notes may be missing based on the large gap between October 2008 and August 2009.  *See* AR 402 (Oct. 1, 2008 treatment note stating Ms. Orcutt will return in two months).

two-step analysis for determining the extent to which a claimant's symptom testimony must be credited. *Trevizo*, 871 F.3d at 678. In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). In this first step, a claimant need only show that his or her impairment could reasonably have caused *some degree* of the symptom alleged. *Garrison*, 759 F.3d at 1014. A claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms or produce objective medical evidence of the pain, fatigue, or the severity thereof. *Id.*

In the Ninth Circuit, when a claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony about the severity of his symptoms "by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). As the Ninth Circuit has recognized, this is not an easy requirement to meet because the "clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015. However, "the ALJ is not required to believe every allegation of disabling pain," otherwise disability benefits "would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Id.* (quoting *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). For example, an ALJ may consider factors such as: (i) inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; (ii) whether the claimant engages in daily activities inconsistent with the alleged symptoms; or (iii) functional restrictions caused by the symptoms. *Id.*; *Rounds v. Comm'r Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain'." *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell*, 947 F.2d at 345–46). "General findings are insufficient; rather,

the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Rounds*, 807 F.3d at 1006 (an ALJ must specify "which symptom testimony is not credible and what facts in the record lead to that conclusion"). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning" that will allow a reviewing court "to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1103).

### A. The ALJ did not State Clear and Convincing Reasons to Conclude that Orcutt was Exaggerating her Pain Symptoms

Ms. Orcutt testified about her impairments and limitations. AR 32–42, 521–530. The ALJ found that medical evidence demonstrated the existence of Orcutt's impairments affecting her ability to work. AR 485. Orcutt therefore met her burden to demonstrate the existence of a condition that would cause some degree of limitation. *Id*. The ALJ did not make a finding of malingering, or cite any portion of the record in which any medical provider made such a finding, but he made a finding of exaggeration and symptom magnification. AR 485–88. The ALJ determined there was a "consensus" that medications and overall treatment had controlled Orcutt's symptoms and "her protestations to the contrary, not objectively demonstrated", appeared to be exaggerations. AR 488. The court's review of the record does not support any such consensus.

An individual who is malingering "is fabricating or grossly exaggerating symptoms and her level of functioning, usually for some primary gain such as financial compensation, avoiding work, or some other responsibility." 24 Am. Jur. Proof of Facts 3d 187 (updated July 2006). "If treating sources do not question a claimant's veracity, neither should an ALJ, assuming that the physician(s) is reliable in other ways as well." 2 Soc. Sec. Disab. Claims Prac. & Proc. § 22:78.1 (2nd ed. updated Nov. 2018) (collecting cases, including *Irwin v. Astrue*, 167 Soc. Sec. Rep. Serv. 154, 2011 WL 2619503 (D. Or. July 1, 2011) (ALJ's reasons for discrediting claimant's testimony, financial and situational factors among others, were not clear and convincing or supported by substantial evidence where no doctor questioned her credibility or found her to be malingering).

No treating, examining, or reviewing doctor suggested that Ms. Orcutt was exaggerating

or magnifying her symptoms. In fact, Dr. Cestkowski's report stated there was no evidence to suggest symptom magnification and Waddell's signs were all negative.[11] AR 777. The ALJ gave Dr. Cestkowski's opinion great weight but his decision made no mention of that portion of the doctor's opinion indicating he found no indication of symptom magnification or malingering. Orcutt's treating physician, Dr. Robinson also found that Orcutt's history of injury was consistent with the objective findings and her complaints were consistent with the history of the injury. AR 429; *see also* AR 439–42 (Nov. 2009 RFC questionnaire). Nurse Landcastle similarly reported symptoms consistent with Orcutt's diagnosis and clinical findings. AR 406–09 (Oct. 2009 RFC questionnaire).

In addition, the ALJ erroneously inferred that Orcutt magnified her symptoms because she did not undergo surgery. The ALJ pointed to Dr. Robinson's initial finding that surgery was not appropriate and a progress note indicating she did not have pathological symptoms, just pain, and her pain was not severe enough for surgery. AR 486 (citing AR 227, 364). However, Dr. Robinson's initial opinion was rendered on April 20, 2007, and the doctor opined that if Orcutt did not improve nerve blocks and surgery "may be necessary." AR 227. The second record is for a November 9, 2007 visit. At this time Dr. Robinson noted "the progression of her problem seems to be getting worse." AR 362. He prescribed Lidoderm patches for her pain but opined her pain was not severe enough for surgery. AR 364.

Based on these two early treatment records, the ALJ inferred that "her symptoms were not as severe as alleged." *Id*. The lack of recommendation for a more aggressive treatment, absent more, is not a legitimate reason to discount the severity of pain. *Trevizo*, 871 F.3d at 677 (absence of aggressive treatment for plaintiff's back pain was not a legitimate reason to find her pain was "non-severe"). Orcutt was referred to a pain management specialist, Dr. Catania, who performed a series of nerve blocks that provided little or no pain relief. Furthermore, the ALJ ignored Orcutt's 2009 testimony that she declined surgery based on the medical risk her doctor explained. He also

---

[11]  "Physicians use Waddell tests to detect nonorganic sources, such as psychological conditions or malingering, for lower back pain." *Reinertson v. Barnhart*, 127 F. App'x 285, 289 (9th Cir. 2005). The test establishes five types of "Waddell's signs." *Wick v. Barnhart*, 173 F. App'x 597, 598 (9th Cir. 2006) (citing Gordon Waddell et al., *Nonorganic Physical Signs in Low–Back Pain*, 5 Spine 117, 117–25 (Mar.-Apr. 1980)). A finding of "three or more of the five types is clinically significant." *Id*.

failed to mention Dr. Robinson's later progress notes indicating that Ms. Orcutt "likely will be a candidate for surgical treatment" if treatment with the pain clinic was not helpful. AR 41–42 (Orcutt testifying she did not want anything to do with a "tricky operation"), 338, 389, 418, 422, 429, 434. The fact that Orcutt declined surgery was not a clear and convincing reason to discredit her testimony regarding the severity of her pain.

The Decision states that the adverse credibility finding is based in part on a lack of objective medical findings. AR 485–89. An ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell*, 947 F.2d at 346–47. Otherwise, "there would be no reasons for the adjudicator to consider anything other than medical findings." *Penny v. Sullivan*, 2 F.3d 953, 957 (9th Cir. 1993). "Different people have greater or lesser sensitivity to pain." *Id*. at 958. Thus, courts recognize that a condition, such as arthritis, which causes mild pain in some individuals, may cause disabling pain in others. Soc. Sec. Disability Law & Procedure in Fed. Ct. § 4:22 (updated Apr. 2018) (collecting cases). Pain can be severe and disabling even in the absence of "objective" medical findings (*i.e.*, test results demonstrating a physical condition that normally causes pain of the severity the plaintiff claimed). *Id*. (collecting cases). As explained, Drs. Robinson, Catania, Krutulis, and Nurse Landcastle each made objective findings to support Orcutt's pain allegations. Thus, the ALJ erroneously found a lack of objective medical findings. AR 485–89. The ALJ failed to provide clear and convincing reasons to explain why these similar findings adversely affected Orcutt's credibility.

## B. Ms. Orcutt's Daily Activities Were Not a Clear and Convincing Reason to Discredit her Pain Testimony

During the 2013 hearing, Orcutt testified her activities included working two 4-hour shifts per week at 7-11, sewing, and performing limited housework. AR 523–25. In her part-time job, she ran the register, cleaned up the coffee aisle, and restocked small items such as sugar packets and creamers. AR 521–23. Orcutt testified she had periods where she was unable to work at all, she worked at "light duty," and did not do all of the tasks required of similarly-situated employees. *Id*. Additionally, she alternated between sitting and standing at will and took numerous breaks

during each 4-hour shift.  *Id.*  Orcutt testified she did not believe she was capable of working full time because she had difficulty working 8-hours per week.  AR 531.

The ALJ determined that Ms. Orcutt's daily activities were inconsistent with disabling levels of pain.  AR 488.  He found that Orcutt's part-time work indicated that her "daily activities have, at least at times, been somewhat greater than [she] has generally reported," even though the ALJ recognized her work at the 7-11 was not substantial gainful activity.  AR 488.  The ALJ concluded she is "able to work when she needs to work."  *Id.*

The ALJ also found Orcutt's credibility was undermined by her testimony that her husband, who has multiple sclerosis and receives social security disability, completes chores she cannot.  AR 488.  Although the ALJ found that Orcutt's daily activities were "fairly limited," he determined that two factors weighed against a finding of disability: (1) "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty," and (2) even if Orcutt's daily activities were truly as limited as alleged, it was "difficult to attribute that degree of limitation to [her] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed" in the Decision.  AR 489.

Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that activities of daily living have a bearing on a claimant's credibility only if her level of activity were inconsistent with her claimed limitations.  *Garrison*, 759 F.3d at 1016.  When an ALJ finds that a claimant's daily activities are consistent with regularly attending a fulltime job, the ALJ must explain why particular activities establish that the claimant has the ability to maintain regular attendance at work.  *Popa*, 872 F.3d at 906.  The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  *Garrison*, 759 F.3d at 1016 (claimants need not "be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").  "Household chores, cooking simple

meals, self-grooming, paying bills, writing checks, and caring for a cat in one's home, as well as occasional shopping outside the home, are not similar to typical work responsibilities." *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017).

The transcript does not support the ALJ's finding that Orcutt testified her husband does "heavy work." AR 488, 525. The ALJ mischaracterized Ms. Orcutt's testimony. In response to the ALJ's question she testified:

> Q And who takes care of the cleaning around the house?
>
> A My husband and I both do. What I can't do, he picks up. He does the mopping, a lot of the vacuuming. When it comes to dishes time he does the heavy pots and pans, I do glasses and silverware. And, you know, however long and whatever is there, we try to work together and just accomplish things….
>
> Q And he does the heavy work?
>
> A Yeah. Well, he does injections every day. He's on medication, and we work together. We do what we can do, and if it doesn't get done it just doesn't get done until we can do it.

AR 525. Read in context, Orcutt explained that her husband did heavy work like mopping, vacuuming and washing heavy pots and pans. They work together and do what they can do, and sometimes the chores don't get done. Moreover, the ALJ's finding Orcutt's credibility was undermined because her husband has multiple sclerosis and receives social security disability benefits is neither explained, nor supported by the record. Orcutt testified her husband received disability benefits, but the ALJ did not cite, and the court did not find, any reference in the record to the specifics of her husband's medical condition or limitations.

The ALJ provided no explanation why Orcutt's fairly limited daily activities translated to the ability to perform fulltime work. He did not explain how her ability to sew, wash glasses and silverware, and work eight-and-a-half hours per week at light duty with multiple breaks was the same as those required for fulltime work. Orcutt testified she had difficulty working her two 4-hour shifts. AR 531. She also testified that she could only sit a half an hour to forty-five minutes before needing to take a break. AR 530. At work there are milk crates in the back that the manager lets employees use to sit on during breaks. AR 530–31. Orcutt testified that if she was working a 4-hour shift, she would be in the back room two or three times for about five minutes at a time and then go back and do what she had to do. AR 531. Her duties at the 7-11 included running a register

and cleaning up the coffee island.  AR 521.  She only worked 8 ½ hours a week because her employer would not hire her fulltime, and she was not capable of doing the full job.  AR 522.  She cleaned up the coffee aisle when the customer spills something or puts packets in a container or creamer.  *Id.*  Her employer did not have her stock the coolers and other duties "because I can't lift without hurting myself, so they kind of like working with me, just filling in odd hours at the store."  *Id.*

The court finds that the ALJ committed reversible error by failing to explain how Orcutt's limited daily activities were transferable to a fulltime work environment.

### C.  The ALJ improperly Used Orcutt's 2013 Testimony to Discredit Pain Allegations Dating Back to 2007

The ALJ found that Orcutt's date last insured was December 31, 2012.  AR 483.  Orcutt was therefore required to establish disability prior to December 31, 2012.  Orcutt claims she became disabled April 5, 2007.  In November 2009, Dr. Robinson completed an RFC questionnaire form indicating that Orcutt's impairments began April 5, 2007 and had lasted or could be expected to last at least twelve months.  With regarding to her functional limitations, Dr. Robinson opined that Orcutt could: (1) walk only one city block without rest or severe pain; (2) sit or stand for twenty minutes at one time; and (3) sit/stand/walk for less than 2 hours during an 8-hour work day.  AR 440–41.  Dr. Robinson indicated that Orcutt would need a job that permitted shifting positions at will from sitting, standing, or walking, and an 8-hour work day would need to include periods of walking around and unscheduled breaks.  AR 441.  Dr. Robinson responded to question 13 of the form, which asked "the earliest date that the description of symptoms and limitation to this questionnaire applies" and answered April 5, 2007.  AR 442. The ALJ did not explain how Dr. Robinson's November 10, 2009 RFC opinion was "out of proportion to the claimant's admitted activities of daily living that include part-time work" at the 7-11 in two 4-hour shifts in 2013.

More importantly, the ALJ did not develop the record, request additional evidence or seek clarification from Dr. Robinson how, if at all, Dr. Cestkowski's January 2013 opinion and Orcutt's 2013 testimony about her activities of daily living in 2013 affected his opinion about her RFC from April 5, 2007 through November 10, 2009 and later.

An ALJ commits legal error where he devotes almost his entire examination to a claimant's recent condition and fails to address the time period for which a claimant alleges disability. *Penny v. Sullivan*, 2 F.3d 953, 956–58 (9th Cir. 1993). In *Penny*, the plaintiff suffered an initial back injury in 1980 and subsequent neck and back injuries in 1984 and 1988, and he underwent back surgery in April 1988. *Id*. at 955. Penny applied for disability benefits in April 1988 alleging disability "due to back surgery and continuous problems with pain" going back to 1980. *Id*. The ALJ found that Penny met the special earnings requirement through June 30, 1987; thus, Penny had the burden to prove disability prior to June 30, 1987. *Id*. The ALJ held a hearing in December 1988. *Id*. at 956. Penny testified that he endured pain and numbness for years, and it gradually worsened after the April 1988 surgery. *Id*. at 957. The ALJ evaluated the entire case based on the evidence available through the date of his decision, May 17, 1989, and concluded that Penny was not disabled. *Id*. at 956. The Ninth Circuit stated that the record was "confusing" as to whether the ALJ properly focused on Penny's status *prior* to June 1987. *Id*. at 956. The ALJ "devoted almost his entire examination to Penny's pain and disability existing on the date of the hearing." *Id*. at 957. Thus, he failed to examine Penny about the pain existing prior to June 1987. *Id*. at 958. As such, there was no testimony in the record to refute Penny's claim of disability," and the ALJ erred in discrediting Penny's pain allegations. *Id*.

Here, the ALJ devoted his entire examination of Orcutt to her 2013 daily activities, symptoms, and limitations. During the October 2013 hearing, Orcutt's counsel twice emphasized her position was that she was disabled beginning in April 2007, and that the first ALJ erred by finding she only became disabled in the middle of 2009. AR 520, 536. Orcutt's counsel, argued that there were multiple treating source opinions from Drs. Robinson, Krutulis and Catania that supported her disability claim dating back to April 2007. AR 536. Yet the ALJ only questioned Ms. Orcutt regarding her 2013 status. The ALJ then relied on Orcutt's 2013 testimony to discount Dr. Robinson's November 2009 opinion about her RFC from April 5, 2007, through November 10, 2009, which Dr. Robinson opined was expected to last 12 or more months. The decision does not explain how Orcutt's 2013 testimony undermines her credibility about opinions Dr. Robinson reached years earlier.

The ALJ failed to provide specific, clear and convincing reasons for discounting Ms. Orcutt's testimony as to the severity of her symptoms.

Finally, the court has considered but need not decide Orcutt's remaining argument that the ALJ committed reversible error in posing an incomplete hypothetical to the vocational expert about whether Orcutt could perform her past relevant work.

### CONCLUSION

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence. For the reasons explained the court finds that the ALJ's decision is not supported by substantial evidence under 42 U.S.C. § 405(g).

Accordingly,

**IT IS RECOMMENDED:**

1.  The Clerk of Court shall SUBSTITUTE Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

2.  Plaintiff Catherine A. Orcutt's Motion for Reversal and Remand (ECF No. 19) be **GRANTED**.

3.  The Commissioner's Cross-Motion to Affirm (ECF No. 24) be **DENIED**. The Commissioner's final decision in this matter should be **REMANDED** for further proceedings consistent with this decision

4.  The Clerk of Court be instructed to enter judgment accordingly and close this case.

Dated this this 7th day of December 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

38